IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE M. COHEN,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.       ) | No. 05 C 6021 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diane M. Cohen brought this action against the Commissioner ("Commissioner") of the Social Security Administration ("SSA"), appealing the decision to deny her disability insurance benefits ("DIB"). Both parties have filed cross motions for summary judgment. For the following reasons, I deny plaintiff's motion and grant defendant's motion for summary judgment.

I. Background

Plaintiff filed her application for DIB on March 27, 2003, alleging a disability onset date of June 27, 1989. Both parties agree that plaintiff's date last insured ("DLI") was December 31, 1991, and therefore had to establish that her disability began on or before that date. Her applications were initially denied on July 28, 2003 and upon reconsideration on September 17, 2003. The explanation for this determination sent by the SSA stated "[t]he medical evidence in file shows that your condition did cause some restrictions in your ability to function prior to [December 31,

1991]. However, based on your description of the job of personnel recruiter[], we have concluded that you had the ability to return to that type of work on or before 12/31/91." (R. 46.)

### a. The Hearing

At plaintiff's request, a hearing was held on November 22, 2004, before Administrative Law Judge John Mondi ("ALJ"). Plaintiff was represented by counsel and, along with her husband Mark Cohen, testified at the hearing. She explained that she had been diagnosed with multiple sclerosis ("MS") in approximately July of 1989, when her daughter was two years old, but had experienced ringing in her left ear and numbness in her left foot as early as 1987, during her pregnancy. Plaintiff also testified that her last job had been as a personnel recruiter with a temporary job placement agency approximately in 1987.[1] ( R. 267.) She was unemployed the last couple of months of her pregnancy and received unemployment benefits during that period. (R. 269.) After her unemployment benefits expired, she did not return to the workforce in order to stay home with her child. (R. 269-70.) Plaintiff also described what her physical condition was like from the birth of her daughter through 1991. She explained she suffered from severe headaches and fatigue, and that she relied on her husband and mother for help looking after her daughter. (R. 277-78.) She

---

[1]Plaintiff testified she was not sure of the exact date she concluded her last employment. In her SSA work history report (R. 75), plaintiff wrote she was last employed in 1986.

2

explained her husband was able to help in the evenings and that her mother would travel to stay with her at times. Her husband corroborated her testimony. (R. 297-98.)

The ALJ inquired about plaintiff's job performance in 1987, at her last place of employment. Plaintiff said she did not believe her last employer to be dissatisfied with her work, nor was she ever expected to conduct any heavy lifting or much physical activity. (R. 271, 268.) When asked whether she had to miss work while employed as a personnel recruiter as a result of her physical condition, plaintiff testified that "[t]here would be days when I would have the headaches or the fatigue would just get to me and they would allow me to leave on occasion. Or if it was a slow day, I could just sit back." (R. 271.) She said she was let go by her employer because they were "cutting back." (R. 269.)

Plaintiff's counsel also asked her about her physical condition during her previous employment at Hertz, prior to working as a recruiting coordinator. She had worked as a secretary for Hertz. (R. 283.) During that time, her supervisor had accommodated her by providing her an office where she could work with the lights off, in order to avoid triggering her headaches. (R. 284.) She explained that once she had a headache, she needed several hours of sleep to improve her condition. (R. 286.)

Plaintiff testified that, overall, her physical condition has deteriorated since she was last employed and since 1991, her DLI. She feels her ability to concentrate has declined and described how

3

she presently experiences more acute ringing in both her ears and increased numbness in both her legs. (R. 288-89.) She had recently experienced collapsing unexpectedly, but is still able to walk without any assistance. (R. 272-73.) She explained she cannot walk as far or as long as most other people. (R. 272.) Plaintiff also said she has a hard time sitting still and has to move around because her legs bother her. (R. 273.) In response to a question from the ALJ about whether she can lift a gallon of milk, she stated "sometimes I have to hold it with both hands." (R. 273.)

Plaintiff also submitted several medical records and reports into evidence, along with pre-hearing and closing memoranda, summarizing this information. Among the records submitted were laboratory reports; a 1989 medical assessment by Dr. Donald Goodkin; medical records ranging from September 1991 through February 2002 by Dr. Kenneth L. Moore; correspondence from and a medical summary by Dr. Hans Evers, ranging from 1993 through 1994; patient notes taken by Dr. Floyd Davis during plaintiff's office visits from 1990-1999; medical reports and patient notes by Dr. George Katsamakis dating from 2002; medical reports and patient notes from Dr. Lawrence Robbins dating from 1995 through 2002; a report by Dr. Julian Freeman dated January 15, 2005, in which he reviews plaintiff's medical history; and plaintiff's medical records from Loyola University Medical Center dated December 1989

4

through June 1990. These medical records and reports detail plaintiff's medical history and treatment.

b. The ALJ's Decision

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). The ALJ found plaintiff's medically determinable impairments to be severe, but that as of December 31, 1991, those impairments did not meet or equal any impairment listed in Appendix 1, Subpart P, Regulation No. 4. Therefore, a determination of plaintiff's residual functional capacity (RFC) on and before the DLI was necessary.

In determining plaintiff's RFC, the ALJ did not find plaintiff's allegations regarding symptoms and limitation to be credible. The ALJ cited the following reasons in support: plaintiff's discontinuation of work coincided with her pregnancy and the birth of her daughter; her MS was not diagnosed until two years after the birth of her child; and the treatment records did "not establish functional limitations that would preclude all work, even currently despite [plaintiff's] representations as to a worsening condition." (R. 14.)

The ALJ discussed several, but not all, of the submitted medical records and reports. The ALJ adopted the conclusions of the state agency physicians, that plaintiff's "impairments did not meet or equal any impairment listed in Appendix 1 and allowed light work subject to a need for a hand held device . . . and no more than occasional climbing of ladders, ropes, ramps and stairs." (R.

5

14.) The ALJ found these consistent with the objective evidence dated through the DLI, "including information provided by claimant in response to a questionnaire on July 29, 1991." (R. 14.) The ALJ's decision provides:

> The alleged onset of disability is June 27, 1989. Records from Loyola University Hospital covering the period December 7, 1989 to June 21, 1990 (Exhibit 18F) show that claimant was first seen complaining of feeling very tired and reported, among other things, decreased energy for five years, ringing in her left ear, tripping over her tongue, and newly diagnosed multiple sclerosis. Examination disclosed fine lateral nystagmus; strength at 5/5 except 4/5 in her byceps; and a gait that was steady and without ataxia.[2] The initial assessment was newly diagnosed multiple sclerosis with claimant complaining of some symptoms but no acute exacerbations (Exhibit 18F/7). On April 17, 1990 an opthamologist assessed claimant's vision at 20/20 and MS retinopathy although a subsequent ERG test for MS retinopathy on June 21, 1990 was within normal limits. Records from Dr. Evers from 1993 to 1994 reveal that claimant had headaches which were alleviated by medication (Exhibit 9F). Thereafter, she was seen yearly by Dr. Davis from at least August 20, 1992 (Exhibit 4F/9) until his retirement in about 2003 when Dr. Katsamakis took over his practice.

(R. 15.)

The ALJ rejected Dr. Katsamakis' opinion that plaintiff was disabled in 1989 as inconsistent with the treatment records and other evidence, and afforded it minimal weight under SSR 96-2p. The ALJ pointed out that Dr. Katsamakis' opinion is inconsistent with Dr. Davis' notes or a 1991 medical form filled out by plaintiff herself. (R. 15.) In the 1991 form, plaintiff reported that she did not need any assistance getting in or out of bed,

---

[2]Ataxia involves a loss of coordination in the muscles, commonly in the extremities.

6

standing up from a chair or couch, moving in bed, using the toilet and getting in or out of the shower. (R. 139.) Similarly, the ALJ also rejected Dr. Freeman's opinion that plaintiff's records suggest she was disabled in 1989. In doing so, the ALJ stated Dr. Freeman was "a consultant who saw claimant at counsel's request" and that his opinion was inconsistent with "the treatment records and other evidence." (R. 15.)

Finally, the ALJ found that through her DLI, plaintiff was able to return to her employment. Plaintiff's "past relevant work was as a realtor, secretary and relocation counselor. Given her residual functional capacity through her date last insured, she was able to return to past relevant work." (R. 16.)

## II. Legal Standard

The Act provides for limited judicial review of final decisions of the Commissioner. I may only to determine whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, I may not "reevaluate the facts, re-weigh the evidence, or substitute [my] own judgment for that of the [ALJ]." *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir. 1993) (citations omitted). Rather, I must affirm a decision supported by substantial evidence in the absence of an error of law. *Id.* at 336-37.

III. Discussion

Social Security regulations require that a claimant suffer from a disability within the meaning of the Act in order to received DIB. 20 C.F.R. § 404.1505(a). In order to determine whether the claimant is disabled, a sequential five-step evaluation must be performed pursuant to 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

> The [ALJ] must determine in sequence:
> (1) whether the claimant is currently employed; (2) whether she has severe impairment; (3) whether her impairment meets or equals one listed [in 20 C.F.R. pt. 404, subpt. P, app. 1]; (4) whether the claimant can perform her past work; and (5) whether the claimant is performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope v. Shalala*, 998 F.2d 473, 477-78 (7th Cir. 1993) *(overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)); 20 C.F.R. § 404.1520(a)(4)(i)-(v). In this case, the ALJ determined that Cohen was not entitled to DIB at step three: does the impairment meet or exceed one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1? 20 C.F.R. § 404.1520(a)(4)(iii).

Plaintiff asserted to the ALJ she satisfied the multiple sclerosis listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09C. An individual meets listing 11.09C when the following symptoms are present:

> Significant, reproducible fatigue of motor function with

8

substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

*Id.* This listing "provides criteria for evaluating the impairment of individuals who do not have muscle weakness or other significant disorganization of motor function at rest, but who do develop muscle weakness on activity as a result of fatigue." 20 C.F.R. Pt. 404, Subt. P, App. 1, § 11.00(E).

Plaintiff first argues the ALJ failed to provide his reasons for failing to consider the opinions of Dr. Goodkin, Dr. Moore, and Dr. Freeman in accordance with 20 C.F.R. § 404.1527, SSR 96-2p, and SSR 96-6p. These regulations set the framework by which an ALJ is to evaluate medical opinions and explain the reasons for his or her determinations in order to allow meaningful review. The ALJ must build a logical bridge between the evidence in the record and the conclusion so that a reviewing court can trace the path of the ALJ's reasoning. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

At the outset, I must reject plaintiff's argument concerning the ALJ's treatment of Dr. Goodkin's diagnosis. Dr. Goodkin's single medical assessment in 1989 provides that "a diagnosis of multiple sclerosis is in order," and the ALJ sufficiently addresses plaintiff's diagnosis. Dr. Goodkin's assessment does not, however, contain any information that is inconsistent with the ALJ's final determination or that is of assistance in determining all of the

factors of 11.09C. In relevant part, it provides

> the upper limbs show no evidence of a drift nor focal weakness. . . . sensation is normal. Point-to-point testing is normal with the exception of a superimposed postural tremor. This does not produce functional impairment. Rapid alternating rhythmical movements show a very minimal suggestion of impairment in the right hand. She is not aware of this. There is no segmental sensory level of the body. Lower limb reflexes are brisk at the knee . . .toe responses are neutral to flexor. No catch of spasticity is evident. Lower extremity sensation is normal. Heel-to-shin testing is normal. Gait shows no observable impairment.

(R. 115.)

Similarly, Dr. Moore's records do not contradict the ALJ's conclusion. On September 5, 1991, Dr. Moore's diagnosis was "mild MS" and noted plaintiff had "'strange sensation' in teeth[,] numbness over left side of face[]. . . . has intermittent right-sided paresthesias."[3] (R. 117.) Dr. Moore also noted the "usual intensity" of plaintiff's headaches as "moderate," which is explained as "painful, but able to continue normal activities." (R. 118.) These notes do not address motor functions or muscle weakness, as set forth in 11.09C.

In contrast, the opinion of Dr. Freeman was directly contrary to the ALJ's ultimate decision. Dr. Freeman examined the same medical records before the ALJ and reached the conclusion that plaintiff would meet the listing in 11.09C in 1989, at the time she was initially diagnosed with MS. In rejecting Dr. Freeman's opinion, the ALJ stated Dr. Freeman was "a consultant who saw

---

[3]Paresthesias is a skin sensation, such as tingling.

claimant at counsel's request" and that his opinion was inconsistent with the treatment records and other evidence. (R. 15.) Plaintiff stresses that this, without elaboration, is not sufficient. The ALJ, however, did elaborate. He provided a summary of the medical records, reproduced in section I.B *supra*, that supported his conclusion that plaintiff did not satisfy the listing in 11.09C. He also specifically addressed a number of inconsistencies between these records and Dr. Katsamakis' opinion, which was similar to Dr. Freeman's in all material respects. Both doctors opined that plaintiff was disabled prior to 1991 based on her medical records, as neither was her treating physician at that time. Therefore, while the ALJ's determination with respect to Dr. Freeman was not expanded upon in his decision, the treatment of Dr. Katsamakis' opinion sufficiently affords a description of the "inconsistencies" with the medical records identified by the ALJ. To the extent that the ALJ's treatment of Dr. Freeman's opinion constitutes a deficiency, I believe it to be harmless. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (error was harmless when "although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctor's opinions"); *Keys v. Barnhart*, 347 F.3d 990, 995-95 (7th Cir. 2003) ("doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions"); *Pigram v. Barnhart*, No. 00 C 7163, 2002 WL 187500, at *8 (N.D. Ill. Feb.

6, 2002) (Pallmeyer, J.) (ALJ's failure to discuss weight given to a doctor's opinion was harmless in light of the opinion's inconsistencies with the record). Ultimately, a remand on this point would not result in a different outcome, for the ALJ would simply reproduce his analysis concerning Dr. Katsamakis' report in addressing Dr. Freeman's opinion. *See Keys*, 347 F.3d at 994-95; *Pigram*, 2002 WL 187500 at *8 (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

Plaintiff also claims the ALJ disregarded her subjective complaints in the determination of step three. The ALJ found plaintiff's testimony "not credible in establishing disability on or prior to the expiration of her insured status." (R. 14.) Once again, the ALJ cited plaintiff's treatment records in support of his conclusion. Furthermore, plaintiff's testimony does not necessarily contradict the ALJ's decision. Plaintiff testified that while she felt fatigued after the birth of her daughter in 1987, she was still able to care for her and that she did not have the help of her husband and mother at all times, only intermittently. Although she has recently experienced a collapse, she has always been able to walk and use the shower without assistance. In response to the question concerning her strength to lift a gallon of milk, plaintiff asserted she is presently able to do so by herself and does not always have to use both hands to do so. She also testified that at her last place of employment she was able to perform her job functions, none of which included heavy

lifting, and would occasionally leave work early. She also testified that her last employer did not express dissatisfaction in her job performance to her.

Plaintiff next argues that the ALJ failed to follow SSR 96-6p by adopting the conclusions of the State agency physicians over the treating physicians' conclusions, as consistent with the objective evidence. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The ALJ here sufficiently pointed out inconsistencies among Dr. Katsamakis's reports and Dr. Davis's patient notes, including that:

> Dr. Davis' records show that claimant was seen on March 10 and August, 22, 1994, and on August 22, 1995 when she reported that her headaches were doing well and that Depakote and prednisone really helped. Dr. Davis's short yearly notes thereafter [in 1996-1999] are also not supportive of disability. Indeed, when claimant was seen in November 1999 she reported that she was doing well (Exhibit 4F/5).

(R. 15.) Therefore, I do not find that the ALJ deviated from SSR 96-6p in making this determination.

Plaintiff further takes issue with the ALJ's rejection of Dr. Katsamakis' opinion by arguing that the ALJ improperly rejected his opinion because he was not plaintiff's treating physician in 1991. In support of her argument, plaintiff cites SSR 83-20, which allows an ALJ who has found a claimant disabled at the time of application

to relate back that disability to an earlier point in time based on medical or other evidence. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). However, the ALJ here did not find plaintiff to be presently disabled, therefore SSR 83-20 does not apply. *Id.* (SSR 83-20 does not apply if ALJ does not find plaintiff disabled). In fact, the ALJ examined Dr. Katsamakis' opinion against plaintiff's underlying medical records to determine the weight to afford that opinion. As already described, the ALJ sufficiently focused on inconsistencies among plaintiff's treatment records and Dr. Katsamakis' opinion, which caused him to reject Dr. Katsamakis' opinion that plaintiff was disabled in 1991.

Plaintiff also challenges the ALJ's credibility finding as erroneous and unsubstantiated. An ALJ's credibility determinations "generally will not be overturned unless they were 'patently wrong.'" *Zurawski*, 245 F.3d at 887 (quoting *Powers v. Apfel*, 207 F.3d 431, 431 (7th Cir. 2000)). SSR 96-7p requires the ALJ to consider the claimant's "statements about symptoms with the rest of the relevant evidence in the case record" and to consider the entire case record, including objective medical evidence, and other relevant evidence in coming to a credibility determination. The SSR also requires an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

Here, the ALJ found plaintiff's complaints were "not credible in establishing disability on or prior to the expiration of her insured status." (R. 14.) The ALJ offered several reasons for

14

his credibility determination of plaintiff's testimony, including that "treatment records . . . do not establish functional limitations that would preclude all work, even currently despite claimant's representations as to a worsening condition." (R. 14.) The ALJ's decision sufficiently summarizes a number of plaintiff's medical records, spanning over several years, which supports the conclusion that plaintiff was not disabled. Nor do plaintiff's medical records reveal "substantial muscle weakness on repetitive activity" as set forth in 11.09C.

Finally, plaintiff argues the ALJ erroneously found plaintiff capable of performing past relevant work prior to her DLI, in accordance with step four. Plaintiff bears the burden of demonstrating she could not perform her past relevant work. *Clifford*, 227 F.3d at 868. For the reasons already discussed concerning the content of plaintiff's medical records, and in light of the ALJ's acknowledgment of plaintiff's previous work experience, plaintiff's argument fails. Plaintiff's last two jobs, as a secretary and relocation counselor, were desk jobs that did not require any kind of heavy lifting or unusual mobility. (R. 268-69, 284.) Overall, I find substantial evidence exists to support the ALJ's conclusions.

IV. Conclusion

For the reasons stated herein, plaintiff's motion is denied and defendant's motion for summary judgment is granted. The final ruling of the SSA is affirmed.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 15, 2006